MURPHY, Circuit Judge,
dissenting.
In United States v. Villano, this court held that “[wjhen an orally pronounced *859 sentence is ambiguous ... the judgment and commitment order is evidence which may be used to determine the intended sentence.” 816 F.2d 1448, 1451 (10th Cir. 1987) (en banc). The majority contends the district court’s June 2007 oral sentence was not ambiguous, and thus under Villano this court may not consider the subsequent written judgment to determine the intended sentence. Maj. Op. at 856-57. In reviewing the transcript of the revocation hearing, however, it becomes apparent the oral sentence was laden with ambiguity. The district court used the terms “probation” and “supervised release” interchangeably and without precision throughout the revocation hearing.
At the conclusion of the portion of the revocation hearing when Barwig admitted the allegations of the probation violation report, the district court stated: “I intend to find that you violated your supervised release and to revoke that term.” (Emphasis added). Because it is undisputed that the underlying sentence was probation, it is clear that when the court used the term “supervised release” it really meant “probation.” The court then proceeded to state the sentence it intended to impose:
I’m finding that revocation of your supervision is mandatory pursuant to statute based on your possession of a controlled substance and your refusal to comply with drug testing.
I do intend to revoke your probation and sentence you to ten months in confinement.
In almost the next breath, after indicating his intent to “revoke [] probation,” the court stated: “Reimposition of a one-year term of supervised release is authorized.” (Emphasis added). In expressly indicating “reimposition,” the district court was necessarily referencing the violated probation, yet it used the term “supervised release.” Thus, the court again ambiguously used the term “supervised release” when it meant “probation.”
After the court heard from Barwig, it stated:
Ms. Barwig, I’m going to take a chance on you, but I want to tell you that there are no more bites at the apple to be had. I’m going to take you at your word as you sit here this afternoon, and I’m going to hold you to what you have told me. I’m going to sentencing [sic] you to four months home confinement and two years of supervised release on the same terms and conditions.
The court indicated it would take a chance on Barwig and allow her a second chance, suggesting that this sentence would be like the first, i.e., probation. Nevertheless, like it had earlier in the hearing, the court again referenced “supervised release” when it meant “probation.”
In its analysis of whether the oral sentence was ambiguous, the majority considers only the district court’s statement “I’m going to sentence] you to ... two years of supervised release.” Maj. Op. at 856. In doing so, the majority simply ignores the district court’s interchangeable, imprecise use of the two terms throughout the revocation hearing, turning a blind eye to all but this one statement. Id. at 856. The majority thereby imposes a rule that this court is limited to consideration of only the words following the district court’s now exclusively important phrase “I sentence you to” and must completely ignore the rest of the oral ruling, no matter its contents, in deciding whether an oral sentence is ambiguous. Id. at 856-57.
The majority contends this limited approach is mandated under Villano because there “[w]e focused exclusively on the moment when the district court formally imposed the sentence and did not comb the remainder of the sentencing transcript in search of ambiguity.” Id. at 856-57. *860 What the majority fails to note, however, is that in Villano the allegation of ambiguity was based solely on the difference between the written order and, as the majority refers to it, “the moment [during the oral ruling] when the district court formally imposed the sentence.” Compare Maj. Op. at 856, with Villano, 816 F.2d at 1449-50.[1] As a consequence, this court in Villa-no had no reason to look beyond the moment when the district court formally imposed the sentence to other portions of the sentencing transcript; this moment was the only pertinent part of the sentencing hearing. 816 F.2d at 1449-51. In the instant case, however, the ambiguity is contained within the oral sentencing hearing and does not involve the subsequent written order. Villano, then, did not resolve or address the question presented here: Whether this court may consider the entirety of the sentencing hearing to determine whether an oral sentence was ambiguous.
The rule now created by the majority will lead to illogical, unjust, and unintended results. For example, a district court presented with an advisory Guidelines range of 135-168 months’ imprisonment could state frequently and consistently its intent “to impose a sentence at the bottom of the Guidelines range” but ultimately, in the now singularly significant phrase, state, “I sentence you to 153 months’ imprisonment.” Even if a subsequent written order provided the intended 135-month sentence, the rule created by the majority would allow for no retreat from the unambiguous 153-month sentence.[2]
Although the majority contends its approach is necessary because “[a] defendant must be entitled to rely on a judge’s unambiguous words,” Maj. Op. at 857, a judge’s words certainly are not unambiguous when they directly conflict with earlier statements made in the same hearing. This presumably is the reason why other courts considering this question have looked beyond the words following the phrase “I sentence you” in determining whether a sentencing ambiguity exists.[3] See, e.g., *861 United States v. Osborne, 345 F.3d 281, 283 n. 1 (4th Cir.2003) (“Because the sentencing transcript indicates that the district court adopted the guideline sentencing range and recognized that there was no basis for a downward departure, we view the [below guidelines range] 180-month orally pronounced sentence as ambiguous.”); United States v. Pagan, 785 F.2d 378, 380 (2d Cir.1986) (relying on a written order to resolve ambiguity in the oral sentence where “the oral pronouncement ... taken as a whole, was ambiguous”) (emphasis added); United States v. Marchese, 87 Fed.Appx. 276, 277 (3d Cir. 2004) (unpublished disposition) (concluding the oral sentence was ambiguous after considering the district court’s initial expression of intent during the oral hearing); United States v. Brown, No. 97-30365, 1999 WL 369902, at *4 (9th Cir. May 18, 1999) (unpublished disposition) (concluding oral sentence was ambiguous where the sentence imposed by the district court was “contrary to the district court’s reasoning leading up to the pronouncement ... and violatefd] the applicable statutory and guidelines ranges”).[4]
*862 Because the district court’s interchangeable and imprecise use of the terms “probation” and “supervised release” throughout the oral hearing resulted in an ambiguous oral sentence, the majority should have looked to the subsequent written order to help resolve the ambiguity. United States v. May, 52 F.3d 885, 893 (10th Cir.1995) (stating this court may consider a succeeding written order to clarify an ambiguous oral sentence); Villano, 816 F.2d at 1450-51 (same). A week after the June 2007 hearing the district court issued a written order entitled “ORDER REVOKING AND REINSTATING TERM OF PROBATION.” The title makes clear that the district court intended to reinstate probation. Even though it is undisputed that the revoked sentence was a term of probation, in the text of the order the district court, as it did at the hearing, referred to the underlying sentence as supervised release. In articulating its sentencing intent, the district court ordered “that the defendant’s term of supervised release be revoked and reinstated” (emphasis added). The text thereby indicates the district court intended to “reinstate” the sentence which had been revoked, i.e., the underlying undisputed sentence of probation. This written order, from its title through its text, is thus helpful in clarifying the ambiguities in the oral sentence and indicating reinstatement of probation was intended. The majority should have looked beyond the words following the phrase “I sentence you” to recognize the ambiguity in the district court’s oral ruling and used the written order to aid in the resolution of the ambiguity. Because the written order clarifies the district court’s intent to reimpose probation at the June 2007 hearing, I would affirm the district court’s imposition of a five-year sentence at the February 2008 revocation hearing.

. While the court noted the defendant’s sentence differed from that of his co-defendants, there was no allegation this constituted an ambiguity. United States v. Villano, 816 F.2d 1448, 1450-51 (10th Cir.1987) (en banc).

. The majority claims a result like this can be easily avoided by a party identifying the alleged error at the sentencing hearing or by the district court through procedural mechanisms after the hearing. Maj. Op. at 858 n. 5. As is clear from this very case, however, an oral misstatement or slip of tongue by the judge during a sentencing hearing can easily be missed by both the parties and the district court. Moreover, neither the majority nor dissenter had difficulty locating cases where the parties failed to note mistakes or ambiguities in the pronouncement of sentences.

. The majority contends other circuits have adopted its approach, yet the cases it cites do not address whether a court may look beyond the words following the phrase “I sentence you” in determining whether an oral sentence is ambiguous. Maj. Op. at 857-58 n. 4. For example, in United States v. Moyles, the court concluded the words following the phrase ”1 sentence you” were themselves ambiguous and thus had no reason to look beyond these words in determining whether ambiguity existed. 724 F.2d 29, 29-30 (2d Cir.1983). Similarly, in United States v. Penson, while the court considered only the formal pronouncement of sentence in determining no ambiguity existed, the court did not identify whether the ambiguity alleged by the government was based solely on the formal pronouncement of sentence, a difference between the formal pronouncement of sentence and other portions of the sentencing hearing, or something else. 526 F.3d 331, 334-35 (6th Cir.2008). If the ambiguity alleged was based solely on the formal pronouncement of sentence or the difference between the oral sentence and later written judgment, then again the court would have no reason to look beyond the formal pronouncement of sentence in determining whether ambiguity existed. Finally, the ma *861 jority plucks from United States v. Bonanno, 146 F.3d 502, 512 (7th Cir.1998), the court’s statement that a clear and unambiguous oral pronouncement prevails over a written judgment. Maj. Op. at 857-58 n. 4. This case, however, does nothing to support the majority’s position, as it again does not address whether a court may find an oral pronouncement ambiguous if it conflicts with other portions of the sentencing hearing.

. The majority claims that except for United States v. Brown, No. 97-30365, 1999 WL 369902, at *4 (9th Cir. May 18, 1999) (unpublished disposition), these cases are not contrary to the new rule it creates that this court cannot look beyond the words following the phrase "I sentence you” in determining whether an oral sentence is ambiguous. Maj. Op. at 857-58 n. 4. The majority is mistaken.
The majority asserts the court in United States v. Marchese, 87 Fed.Appx. 276, 277 (3d Cir.2004) (unpublished disposition), sets out the following rule: "Only after discerning facial ambiguity in the formal oral pronouncement [can] the court look to the hearing as a whole and the subsequent written order.” Maj. Op. at 857 n. 4. This reading of Marchese is erroneous. In determining the oral sentence at issue was ambiguous, the very first step in its analysis, the Marchese court expressly relied upon the inclination initially expressed by the judge during the oral proceeding. Id. at 277. The court looked to the sentencing hearing as a whole to determine whether ambiguity existed, and after finding ambiguity used the written order to clarify the sentence. Id. Specifically, after considering the district court's initial inclination, the court stated, "We therefore conclude that an ambiguity existed in the oral sentencing order, but that the written order resolved that ambiguity and that Marchese was required to pay $4,199 in restitution as a term of his supervised release.” Id. at 278. Thus, the majority's statement that in Marchese "[o]nly after discerning facial ambiguity in the formal oral pronouncement did the court look to the hearing as a whole and the subsequent written order,” is simply incorrect.
The majority also contends that in United States v. Osborne, 345 F.3d 281, 283 n. 1 (4th Cir.2003), the Fourth Circuit concluded ambiguity existed solely because the oral sentence was unlawful. Maj. Op. at 857-58 n. 4. In addition to providing an unlikely summation of the Fourth Circuit’s approach, the majority ignores the court’s stated reason for its determination that ambiguity existed: that "the sentencing transcript indicates that the district court adopted the guideline sentencing range and recognized that there was no basis for a downward departure.” 345 F.3d at 283 n. 1. Thus, the Fourth Circuit did not rely simply upon the unlawfulness of the oral sentence in determining ambiguity, but instead looked to the court’s earlier statements during the hearing.
Finally, contrary to the majority’s assertion, in United States v. Pagan, 785 F.2d 378, 380 (2d Cir.1986), the court looked beyond the formal pronouncement of sentence in determining the "oral pronouncement ... taken as a whole, was ambiguous.” Specifically, in determining ambiguity existed the court looked to "a colloquy with the court immediately after pronouncement of sentence." Id. (emphasis added). Thus, each of these cases *862 is contrary to the rule established by the majority.